# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUADRANT 4 SYSTEM CORPORATION, | ) | Case No. 17-19689 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | **Hearing Date: August 31, 2017** |
| | ) | **Hearing Time: 10:00 a.m.** |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on **Thursday, August 31, 2017, at 10:00 a.m.,** we shall appear before the Honorable Jack B. Schmetterer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 682 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PAY RETENTION BONUSES TO FOUR (4) KEY NON-INSIDER EMPLOYEES AND GRANTING SHORTENED NOTICE IN CONNECTION THEREWITH,** a copy of which is hereby served upon you.

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for Quadrant 4 System Corporation**

872347_2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list via CM/ECF, as listed herein, on August 28, 2017.

By: /s/ Nathan Q. Rugg
Nathan Q. Rugg, Esq.

## <u>SERVICE LIST</u>

### <u>VIA CM/ECF</u>

#### *Attorney for U.S. Securities and Exchange Commission*
- Sonia U Chae    chaes@sec.gov

#### *Attorney(s) for BMO Harris Bank, N.A.*
- Stephanie K. Hor-Chen    schen@vedderprice.com, ecfdocket@vedderprice.com
- Douglas J. Lipke    dlipke@vedderprice.com, ecfdocket@vedderprice.com

#### *U.S. Trustee*
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov

#### *Attorney(s) for First Tek, Inc. and First Tek Services Private Limited*
- Mark L Radtke    mradtke@shawfishman.com, kbobb@shawfishman.com
- Brian L Shaw    bshaw100@shawfishman.com, cknez@shawfishman.com

#### *Attorney for BIP Quadrant 4 System Debt Fund I, LLC*
- Matthew T. Gensburg    MGensburg@dandgpc.com

#### *Attorney(s) for Creditor Committee*
- Aaron L. Hammer    ahammer@sfgh.com, chorvay@sfgh.com, mbrandess@sfgh.com, joconnor@sfgh.com, mmelickian@sfgh.com, bkdocket@sfgh.com, dmadden@sfgh.com, evandesteeg@sfgh.com
- Michael A Brandess    mbrandess@sfgh.com, bkdocket@sfgh.com
- Mark Melickian    mmelickian@sfgh.com, joconnor@sfgh.com, mbrandess@sfgh.com, bkdocket@sfgh.com

#### *Attorney for Khannan Sankaran, Pankaj Kalra, Ashish Sanan*
- David A. Newby    dnewby@momlaw.com, lholub@momlaw.com

#### *Attorney for Quadrant 4 System Corporation*
- R Scott Alsterda    rsalsterda@nixonpeabody.com

872347_2

***Attorney for Quadrantfour Software Solutions (Pvt) Limited***
- Mark A. Carter        mcarter@lksu.com, aterry@lksu.com, jbanasiak@lksu.com
- Peter E. Cooper       pcooper@lksu.com, shennessey@lksy.com, aterry@lksu.com

***Attorney for BIP Quadrant 4 System Debt Fund I, LLC***
- Peter J Haley         peter.haley@nelsonmullins.com, marie.moss@nelsonmullins.com

***Attorney for Jordan & Zito LLC***
- Gregory J. Jordan    gjordan@jz-llc.com

872347_2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUADRANT 4 SYSTEM CORPORATION, | ) | Case No. 17-19689 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | Hearing Date: August 31, 2017 |
| _____ ) | Hearing Time: 10:00 a.m. |

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING
## THE DEBTOR TO PAY RETENTION BONUSES TO
## FOUR (4) KEY NON-INSIDER EMPLOYEES AND GRANTING
## SHORTENED NOTICE IN CONNECTION THEREWITH

NOW COMES Quadrant 4 System Corporation, debtor and debtor in possession herein (the "**Debtor**"), by and through its undersigned proposed counsel for its Motion for Entry of an Order Authorizing the Debtor to Pay Retention Bonuses to Four (4) Key Non-Insider Employees and Granting Shortened Notice in Connection Therewith (the "**Motion**") in the above captioned chapter 11 case pursuant to sections 105(a) and 363(b) of the Bankruptcy Code (the "**Code**"). In support of the Motion, the Debtor respectfully states as follows:

## I.    FACTUAL BACKGROUND

1.      On June 29, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 case (the "**Chapter 11 Case**").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its businesses as a debtor in possession in accordance with sections 1107(a) and 1108 of the Code.

2.      On July 6, 2017, an official committee of unsecured creditors (the "**Committee**") was appointed in the Chapter 11 Case.

4

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  Venue

lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).   The statutory predicates for the relief

requested herein are sections 105(a) and 363(b) of the Code, and the applicable rules are Rules

2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      The nature of the Debtor's business, the factual background relating to the

commencement of the Chapter 11 Case, and further factual support for this Motion, are set forth

in more detail in the *Declaration of Robert H. Steele in Support of Chapter 11 Petitions and*

*First-Day Motions* [Docket No. 7] (the **"Declaration"**) filed on the Petition Date and

incorporated herein by reference.[1]

5.      Since the Petition Date, the Debtor has worked to sell substantially all its assets,

consisting of seven (7) business units, each commonly referred to as U.S. Solutions, Hybrid

Solutions, Legacy Staffing, QEDU Education Platform, India Solutions, Stratitude/Agama, and

QHIX Healthcare Platform (the "**Business Units**"). On August 14, 2017, the Debtor conducted

an auction which resulted in the identification of purchasers for its U.S. Solutions, Hybrid

Solutions, India Solutions, and Legacy Staffing business units. Those purchasers entered into

Asset Purchase Agreements with the Debtor for the U.S. Solutions, Hybrid Solutions, India

Solutions, and Legacy Staffing business units, and the sales contemplated therein were closed on

August 18, 2017.

6.      No competing bids in addition to the Stalking Horse Bid were received with

respect to the QEDU Education Platform, and therefore no auction was necessary. The QEDU

Education Platform Stalking Horse Bidder entered into Asset Purchase Agreement with the

---

[1] Any capitalized terms not otherwise defined in the Motion shall have the same meaning as ascribed in the
Declaration.

Debtor and the sale contemplated therein will close on or about August 28, 2017. The sales of

U.S. Solutions, Hybrid Solutions, Legacy Staffing, QEDU Education Platform, India Solutions

(the "**Acquired Assets**") described herein were contemplated well before the petition date, and

have long been a cornerstone of the Debtor's goals in the Chapter 11 Case.

7.      Substantially all of the Debtors remaining assets consist of the Stratitude/Agama,

and QHIX Healthcare Platform business units (the "**Remaining Assets**"). The Debtor is actively

marketing the Remaining Assets and is confident it will conduct a public auction in the coming

months. Notwithstanding the sale of the sales of the Acquired Assets and the marketing of the

Remaining Assets, the Debtor currently remains operational.

8.      In addition to its many other employees, four (4) key employees have been

identified as specifically integral to the Debtor's operations, marketing of the Business Units

(specifically, assisting with due diligence of interested parties and ultimate purchases throughout

the sale process), sale of the Acquired Assets, and maintenance of the Debtor throughout, and in

connection with, the Chapter 11 Case. Recognizing this both pre- and post-petition, the Debtor

made assurances that these employees (the "**Key Employees**") would receive modest additional

compensation in the form of bonuses in exchange for their continued employment with the

Debtor during the Chapter 11 Case through at least the sale of the Acquired Assets (each a

"**Retention Bonus**").

9.      The Key Employees are:

a.  **Aparna Radeekesh.** Ms. Radeekesh is the Debtor's Director of Finance and co-manager of the Debtor's Legacy Staffing Business Unit. Ms. Radeekesh will remain employed full time with the Debtor until approximately October 27, 2017—a date which the Debtor has targeted as the closing date for sales of the Remaining Assets. Ms. Radeekesh's efforts have facilitated the sales of the Acquired Assets, the transition of such assets and related employees, and continued with respect to the contemplated sales of the Remaining Assets. Further still, Ms. Radeekesh has been an irreplaceable asset to the Debtor and its

professionals assisting all of the Debtor's consultants, advisors and attorneys with critical information to be able to manage the day to day operations as well as prepare for the sale of all assets throughout the administration of the Chapter 11 Case.

b.  **Falguni Bhatt**. Ms. Bhatt is the head of the Debtor's human resources department for each of its Business Units. Additionally, Ms. Bhatt co-managed the Debtor's Legacy Staffing Business Unit. Her efforts in both of these capacities have been integral to the administration of the Chapter 11 Case and helped to facilitate the sales of the Acquired Assets. Ms. Bhatt was a critical liaison and source of information with respect to each of the consultants working in the Debtor's Legacy Staffing business unit, which in turn ensured a successful Auction. Ms. Bhatt will remain employed full time with the Debtor until approximately September 15, 2017.

c.  **Arjunan Arjunakani**. Mr. Arjunakani managed U.S. Solutions, Hybrid Solutions, and India Solutions (together, the "**Solutions Business Unit**"), the gross proceeds for the sale of which exceeded $10 million. In that role, Mr. Arjunakani traveled to India twice as well as managed each of the Debtor's Legacy Staffing customers, keeping them informed as well as comfortable with the entire section 363 bankruptcy process. It was through his efforts that a successful auction resulted for the Solutions Business Unit and a successful transition from the Debtor to the purchaser, Aspire Systems, Inc., an Oregon corporation ("**Aspire**"). Mr. Arjunakani was employed by Aspire on or about the closing of the Solutions Business Unit sale.

d.  **John (Dirk) Heitzman**. Mr. Heitzman headed "managed services" for the Solutions Business Unit. He was also the Debtor's primary representative for a large customer of the Legacy Staffing Business Unit, and manager of Stratitude/Agama. Mr. Heitzman was critical to the management and final negotiations of the successful negotiation settling the financial structure between Stratitude and Agama which concluded this past week. Mr. Heitzman was employed by Aspire on or about the closing of the Solutions Business Unit sale.

## II.   RELIEF REQUESTED

10.     By this Motion, the Debtor requests the entry of an order authorizing it to pay Retention Bonuses to the Key Employees. The Key Employees, their titles, and current salaries, along with the proposed Retention Bonuses for each and the proposed dates upon which the Retention Bonuses are to be paid (together, the "**Retention Bonus Proposal**"), are as follows:

7

872347_2

| Employee Name | Title | Current Salary | Retention Bonus | Payment Date |
|---|---|---|---|---|
| Arjunan Arjunakani | SVP – Account Management | $140,000 | $30,000 | 09/08/2017 |
| Falguni Bhatt | HR/Immigration Manager | $100,000 | $10,000 | 09/08/2017 |
| Aparna Radeekesh | Finance Director | $125,000 | $15,000 | 10/27/2017 |
| John (Dirk) Heitzman | VP – Managed Solutions | $115,000 | $10,000 | 09/08/2017 |

11.     Notwithstanding any of their titles, none of the Key Employees is an "insider" of the Debtors as defined by section 101(31) of the Code, *see* 11 U.S.C. § 101(31), nor do any of the Key Employees report directly to the Debtor's Board of Directors.

12.     Each of the Key Employees has been integral in maintaining the going concern value of the Debtor throughout the pendency of the Chapter 11 Case. Specifically, each has worked diligently to minimize attrition of employees of the Debtor and prevent any attrition of customers of the Debtor by serving as a liaison among the Debtor's bankruptcy professionals, the bidders and purchasers of assets, and the Debtor's employees and customers. Without the efforts of the Key Employees, the Debtor would not have been able to maintain its operations after the Petition Date or preserve its going concern value. The Debtor's going concern value allowed it to solicit and receive stalking horse bids, as well as competing bids for the Acquired Assets, resulting in the Sale of the Acquired Assets to the benefit of the Debtor's estate.  Notably, the gross proceeds of the Sale exceeded the initial stalking horse bids therefor by nearly 100%.

## III.     AUTHORITY FOR RELIEF REQUESTED

13.     Under section 363(b) of the Code, a debtor, after notice and a hearing, may use property of the estate other than in the ordinary course of business.  11 U.S.C. § 363(b).  Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out provisions of this title."  11 U.S.C. § 105(a).

14.     For a court to approve the use, sale, or lease of property outside the ordinary course of business, there must be some "articulated business justification."  *Fulton State Bank v.*

8

*Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983). A debtor in possession is entitled to "considerable discretion" in the use of estate assets outside the ordinary course, and its discretion is entitled to "great judicial deference" as long as a sound business justification is given. *In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (applying section 363 to a sale of estate assets).

15.     A considerably more rigorous showing is required where a debtor seeks to use estate funds to pay retention bonuses to employees who are "insiders" See 11 U.S.C. § 503(c)(1)-(2). Because none of the Key Employees is an insider, however, these requirements do not apply. *See In re Global Aviation Holdings Inc.*, 478 B.R. 142, 150 (Bankr. E.D.N.Y. 2012) (holding that section 503(c)(1) was "inapplicable because the KERP Employees are not insiders").

16.     It is likely, however, that a debtor's request to pay retention bonuses to *non-insiders* is governed by section 503(c)(3) of the Code. *See In re Patriot Coal Corp.*, 492 B.R. 518, 536 (Bankr. E.D. Mo. 2013) (concluding that section 503(c)(3) was the "appropriate standard of review" because bonus plan participants were non-insiders); *see also Global Aviation*, 478 B.R. at 150 (applying section 503(c)(3) because relevant employees were non-insiders); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236 (Bankr. N.D. Tex. 2009) (questioning, without deciding, "whether section 503(c)(5) was intended to reach beyond transactions with insiders").

17.     Transfers falling within section 503(c)(3) must be "justified by the facts and circumstances of the case" to be approved. 11 U.S.C. § 503(c)(3). Courts have held that this analysis is "no different than the business judgment standard" employed for the use of estate

property outside the ordinary course of business. *In re Borders Grp., Inc.*, 453 B.R. at 459, 473-74 (Bankr. S.D.N.Y. 2011); *see also Patriot Coal*, 492 B.R. at 531.

18.     Whether the inquiry is characterized as seeking an "articulated business justification" or determining whether relief is "justified by the facts and circumstances of the case," the Retention Bonus Proposal easily satisfies both standards.  The cost of the Retention Bonus Proposal is relatively minor in comparison to the harm that would occur if the Key Employees had left, or were to leave, the Debtor's service prior to their contemplated departure date.

19.     As explained above, each of the Key Employees played an integral role in the Debtor's management and operation prior to the Petition Date and throughout the pendency of the Chapter 11 Case. It is in the Debtor's judgment that the work performed by each of the Key Employees was necessary to preserve the Debtor's going concern value and for the successful sale of the Acquired Assets and contemplated sale of the Remaining Assets.

20.     The Debtor understands that each of Key Employees was either offered other gainful employment by other entities near the time of the Petition Date, and/or could have procured such employment. This is evidenced by the fact that all Key Employees were offered employment by the respective buyers of the Acquired Assets. As such, the Key Employees would have left the employ of the Debtor were it not for the promises of Retention Bonuses.

21.     If the Key Employees had left the employ of the Debtor in the initial stages of the Chapter 11 Case, the Debtor and its estate would have suffered significant harm as its going concern value would have been negatively impacted by attrition of its employees and customers. This reduction in going concern value would also have resulted in the failure of the Debtor's attempt to sell the Acquired Assets at the price it did, or potentially any price. The sales likely

872347_2

also would not have been consummated but for the efforts of the Key Employees in the sale process itself. The specter of a failed sale process and the resultant detriment to the Debtor's estate clearly amounts to a valid business justification for the Retention Bonus Proposal as well as an objective factual justification for the same.

## IV.    <u>NOTICE</u>

22.     Notice of the filing of this Motion and the hearing thereon has been served on three (3) days' notice, via CM/ECF, to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) counsel to the Committee; (c) counsel to the Debtor's secured lenders; and (d) all other parties who have requested notice and service of pleadings.  In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

23.     Bankruptcy Rules 2002 and 6004 provide that, unless the court otherwise shortens the notice period, the movant must provide twenty-one (21) days' notice of a proposed use of property outside the ordinary course of business. Fed. R. Bankr. P. 2002(a)(2), 6004(a). Bankruptcy Rule 6004 also creates a presumptive objection period (subject to reduction at the court's discretion) of seven (7) days, Fed. R. Bankr. P. 6004(b), and stays the effectiveness of an order for another fourteen (14) days, Fed. R. Bankr. P. 6006(h).

24.     As stated above, the relief requested by this Motion is intended to make good on the Debtor's response to the exigent threat of critical employee departures.  As the Court is aware, the Chapter 11 Case has moved extremely quickly, involving disparate and complex sale processes for each of the Business Units. The Debtor determined, at the time, that the Retention Bonus Proposal was the only way to retain the employment of the Key Employees and that concern stands for the remaining Key Employees. By this Motion, the Debtor asks for authority to make good on its sound business decision to offer the Retention Bonus Proposal at the first

872347_2

practicable opportunity. The Debtor therefore requests that the notice and objection period be

shortened to accommodate a hearing on the Motion on August 31, 2017, and that the stay under

Bankruptcy Rule 6006 be waived to allow for immediate relief.

WHEREFORE, Quadrant 4 System Corporation, debtor herein, respectfully request the

entry of an order in accordance with the foregoing recommendations in the form filed herewith

and made a part hereof without further notice, and such other and further relief as is just.

Respectfully submitted,

QUADRANT 4 SYSTEM CORPORATION

By: /s/____Nathan Q. Rugg_____
        One of its attorneys

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtor**

872347_2