## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUADRANT 4 SYSTEM | ) | Case No. 17-19689 |
| CORPORATION, et al, [1] | ) | (Jointly administered) |
| | ) | |
| Debtors. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | **Hearing Date: October 23, 2018** |
| | ) | **Hearing Time: 10:00 a.m.** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Tuesday, October 23, 2018, at 10:00 a.m.,** we shall appear before the Honorable Jack B. Schmetterer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 682 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO STRATITUDE, INC.,** a copy of which is hereby served upon you.

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
ERICH S. BUCK, ESQ. (ARDC #6274635)
NICHOLAS R. DWAYNE (ARDC #6308927)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for Debtors**

---

[1] This case was filed on June 29, 2017, as Case No. 17-19689, and is being jointly administered with the pending Chapter 11 case filed by the Debtor's wholly owned subsidiary, Stratitude, Inc., on October 13, 2017 as Case No. 17-30724, pursuant an order of this Court entered on October 19, 2017 [Docket No. 38].

983767_1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list via CM/ECF on October 1, 2018.

By: /s/ Chad H. Gettleman
Chad H. Gettleman, Esq.

## SERVICE LIST

**VIA CM/ECF**

*Attorney for U.S. Securities and Exchange Commission*
- Sonia U Chae    chaes@sec.gov

*Attorney(s) for BMO Harris Bank, N.A.*
- Stephanie K. Hor-Chen    schen@vedderprice.com, ecfdocket@vedderprice.com 7610@ecf.pacerpro.com, stephanie-hor-7103@ecf.pacerpro.com
- Douglas J. Lipke    dlipke@vedderprice.com, ecfdocket@vedderprice.com 7610@ecf.pacerpro.com, doug-lipke-7162@ecf.pacerpro.com

*U.S. Trustee*
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov

*Attorney(s) for First Tek, Inc. and First Tek Services Private Limited*
- Mark L Radtke    mradtke@shawfishman.com, plove@shawfishman.com
- Brian L Shaw    bshaw100@shawfishman.com, cknez@shawfishman.com
- Peter L Berk    plberk@orb-legal.com, hmilman@orb-legal.com, milmanhr42820@notify.bestcase.com, hmbonesteel@gmail.com

*Attorney for BIP Quadrant 4 System Debt Fund I, LLC*
- Matthew T. Gensburg    MGensburg@gcklegal.com
- Peter J Haley    peter.haley@nelsonmullins.com, marie.moss@nelsonmullins.com

*Attorney(s) for Creditor Committee*
- Aaron L. Hammer    ahammer@hmblaw.com, ecfnotices@hmblaw.com
- Michael A Brandess    mbrandess@sfgh.com, bkdocket@sfgh.com
- Mark Melickian    mmelickian@sfgh.com, joconnor@sfgh.com, mbrandess@sfgh.com, bkdocket@sfgh.com

*Attorney for Khannan Sankaran, Pankaj Kalra, Ashish Sanan*
- David A. Newby    dnewby@momlaw.com, lholub@momlaw.com

983767_1

***Attorney for Quadrant 4 System Corporation***
- R Scott Alsterda   rsalsterda@nixonpeabody.com
- Nathan Q. Rugg   Nathan.Rugg@bfkn.com, jean.montgomery@bfkn.com

***Attorney for Jordan & Zito LLC***
- Gregory J. Jordan   gjordan@jz-llc.com

***Attorney for Cigna Health and Life Insurance Company***
- Richard B. Polony   rpolony@hinshawlaw.com, sedelmai@hinshawlaw.com, courtfiling@hinshawlaw.com, cortiz@hinshawlaw.com

***Attorney for Schaumburg CC Owner, LLC***
- Marc S Lichtman   agent007@lichtmanpartners.com, keisen@lichtmanpartners.com

983767_1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUADRANT 4 SYSTEM CORPORATION, et al[1], | ) | Case No. 17-19689 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **October 23, 2018 at 10:00 a.m.** |
| | ) | |

**MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE
OF FINAL COMPENSATION AND REIMBURSEMENT OF
EXPENSES AS COUNSEL TO STRATITUDE, INC**

TO:    THE HONORABLE JACK B. SCHMETTERER,
      U.S. BANKRUPTCY JUDGE:

Now come Chad H. Gettleman and Erich S. Buck on behalf of Adelman & Gettleman, Ltd., (**"Movant"**), counsel to Stratitude, Inc. (the **"Debtor"**), debtor and debtor in possession herein (the **"Chapter 11 Case"**), and request the entry of an order for the allowance and payment of final compensation and reimbursement of ordinary and necessary expenses incurred in connection therewith as counsel to the Debtor, pursuant to Section 330 of the Bankruptcy Code (the **"Code"**) and Rules 2002 and 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and in support thereof, respectfully state as follows:

---

[1] This Chapter 11 Case, filed on October 13, 2017, as Case No. 17-30724, is being jointly administered with the pending Chapter 11 case filed on June 29, 2017 by the Debtor's patent corporation, Quadrant 4 System Corporation (**"Q4"**), as Case No. 17-30724 (**"Q4 Chapter 11 Case"** and together with this Chapter 11 Case, the **"Chapter 11 Cases"**), pursuant an order of this Court (**"Court"**) entered on October 19, 2017 [Docket No. 192], with the Q4 Chapter 11 Case as the lead case. There has been a separate docket maintained by the Clerk's office in this Chapter 11 Case where certain documents and matters relating solely to this Chapter 11 Case are reflected. However, the vast majority of matters involving this Chapter 11 Case occurred simultaneously with matters in the Q4 Chapter 11 Case, and accordingly, are reflected in the lead case docket. For purposes of this Motion, any reference to documents specifically referenced in the docket maintained in this Chapter 11 Case shall be referred to as the "[Stratitude Docket No.__]". All other references to a docket number shall be to the docket maintained in the Q4 Chapter 11 Case. Also, for purposes hereof, the Debtor and Q4 shall be collectively referred to as the **"Companies"**.

983766_1

# I.

## INTRODUCTION

This motion (the **"Motion"**) encompasses a period of approximately eleven (11) months from October 13, 2017, the date of the commencement of this Chapter 11 Case (**"Petition Date"**), through September 13, 2018, the "Effective Date" under the "Amended Plan" (as defined below), plus the time incurred in the preparation of this Motion, the preparation of the final application for compensation of the Debtor's financial consultants, Silverman Consulting, Inc., and services rendered in connection with the combined notice for all of the Debtor's and Committee's professionals' final fee applications, and represents Movant's final request for compensation in this Chapter 11 Case as counsel to the Debtor. As with the "Interim Application" (defined below), the allowance of Movant's final request for compensation in this Chapter 11 Case should have <u>no</u> impact on the ultimate distributions to the unsecured creditors in this Chapter 11 Case. All funds used to pay any and all such final compensation allowed are being provided by the Debtor's primary secured lender, BMO Harris Bank, N.A. (**"BMO"**), for the sole purpose of paying the remaining allowed administrative claims in this Chapter 11 Case, and have been turned over to the "Liquidating Trustee" (defined below) under the Amended Plan. Any excess of such funds currently being held by the Liquidating Trustee for payment of allowed administrative claims, including any final allowance under this Motion, will be returned to the secured lender pursuant to prior orders of this Court.

On July 5, 2018, Movant filed its only motion for the allowance of interim compensation as counsel to the Debtor, covering the period of October 13, 2017 through May 31, 2018 (the **"Interim Period"** or **"Interim Application"**) [Docket No. 446], which was granted by Order of the Court dated August 9, 2018 [Docket No. 506]. For purposes of brevity, Movant will not repeat the extensive description of the services rendered by Movant for the Debtor during the Interim Period as set forth in the Interim Application, except as necessary to facilitate a review of this Motion. All defined terms used herein shall have the same meanings as set forth in the Interim Application, unless otherwise noted. The Interim Application is incorporated herein by

983766_1

express reference hereto. For purposes of this Motion, the period from and after the Interim Period through the Effective Date (June 1, 2018 - September 13, 2018, including time incurred in the preparation of this Motion thereafter) is hereinafter referred to as the **"Final Period"**.

The Debtor is a wholly owned subsidiary of Q4, a publicly traded company (OTC:QFOR)[2]. As of November 30, 2016, the record number of shareholders of Q4's stock totaled approximately 484 (**"Q4 Stock"**). Prior to, and following, the commencement of the Q4 Chapter 11 Case, Q4 had been engaged in the information technology (**"IT"**) sector as a provider of U.S. based consulting services and products to a variety of industries using human resources, facilities and hardware and software assets located in the United States since in or around 2010 using human resources in the U.S. and India. Q4's business was built through a series of acquisitions over the years, the last of which occurred on November 3, 2016, at which time Q4 acquired all of the outstanding common stock in and to the Debtor as part of simultaneous transactions between the Debtor and its former affiliate, Agama Solutions, Inc. (**"Agama"**), as fully described below.

The commencement of both Chapter 11 Cases is directly attributable to filing of a federal criminal complaint against the Companies' two former key officers, directors, and majority shareholders of Q4 Stock, Nandu Thondavadi (**"Thondavadi"**), the Companies' then-Chief Executive Officer, and Dhru Desai (**"Desai"**), the Companies' then-Chairman of the Board and Chief Financial Officer (collectively, the **"Criminal Defendants"**). On November 29, 2016, the United States Department of Justice (**"DOJ"**) caused a criminal complaint to be filed against the Criminal Defendants, which matter remains pending in the United States District Court for the Northern District of Illinois, Eastern Division (the **"District Court"**), entitled *United States of America v. Nandu Thondavadi and Dhru Desai*, Case No. 16CR772 (the **"Criminal Action"** or **"Criminal Complaint"**). The Criminal Action arises out of alleged violations of, *inter alia*,

---

[2]All trading of the Q4 Stock has been stopped as of the Effective Date.

983766_1

federal securities laws and interstate wire laws, specifically alleging that the Criminal

Defendants violated Title 18, United States Code, §1343 (wire fraud), and Title 18, United States

Code, §1350 (corporate officers' certification of financial reports that do not fairly present, in all

material respects, the financial condition of the Debtor), and also alleging that Thondavadi

violated Title 18, United States Code, §1001 (false statements).[3]  The Criminal Defendants were

arrested on November 30, 2016, by the U.S. Federal Bureau of Investigation for alleged

securities and related fraud, all as more fully set forth in the Criminal Complaint.[4]

The Chapter 11 Case presented Movant with a non-stop series of highly different

responsibilities and challenges. Difficulties caused by Agama and urgencies caused by

employees and subcontracted individuals potentially leaving (some of which did despite the

Debtor's ongoing efforts to maintain continuity), greatly complicated the Debtor's operations,

reporting, books and records, and the maintenance of customer relationships and revenue

sources. The need for immediate asset sale efforts under Section 363 of the Code, negotiations

with competing purchasers and post-closing matters, among other administrative services, all

required Movant's constant attention throughout the Chapter 11 Case.

In particular, at the outset of the Chapter 11 Case, Movant's most significant challenges

concerning the Debtor continued to be the diminishing and potential complete loss of the value

of the Debtor's assets due to the Criminal Defendants' actions and arrest, including their directed

Q4 November 3, 2016 acquisition of the Debtor's stock and simultaneous acquisition of valuable

Agama assets (collectively, the **"Stratitude/Agama Transactions"**). The problems between the

---

[3] On June 29, 2017, the DOJ filed an Information against the Criminal Defendants in the Criminal Action [Criminal Action Docket No. 36], charging them with wire fraud in connection with numerous additional acts of misconduct, including misappropriation of the Debtor's funds, generation of inflated revenues, concealment of liabilities, and attempts to obstruct an investigation brought by the United States Securities and Exchange Commission (**"SEC"**). The SEC also instituted a civil action on the same day.
[4] As of the date hereof, Desai has pleaded guilty to largely all of the matters alleged in the Criminal Complaint pursuant to that certain Plea Agreement dated May 31, 2018 and entered in the Criminal Action [Criminal Action Docket No. 70]. A sentencing hearing for Desai is currently set for September 28, 2018.  As of the date hereof, there has been a "change of plea hearing" (i.e., expectation of guilty plea) filed against Thondavadi which is scheduled before the District Court in the Criminal Action on October 17, 2018 at 10:30 a.m. Following the entry of a guilty plea, a sentencing date for Thondavadi will be set.

983766_1

Debtor and Agama literally began at the closing of the Stratitude/Agama Transactions when Agama did not transfer most of the assets and significant revenues streams which the Debtor had purchased and paid for at the closing, consisting of human resources (programmers and consultants), and the related customer contracts being serviced by these individuals. Incredibly, the Criminal Defendants did nothing about it at the closing or thereafter. Q4's and the Debtor's new management inherited the problem of significant revenues being diverted by Agama, and a commingling of the Debtor's and Agama's books and records, operations, and physical location. Despite the Debtor's new management's ongoing demands, Agama continued to refuse to fully and immediately comply with the underlying asset purchase agreement, and instead made the necessary asset transfers on a piecemeal basis over a period of many months. After months of diligent efforts, the Debtor's new management was successful in de-coupling the Debtor's recordkeeping, financial operation and physical location from Agama in or around May, 2017. The Debtor was also able to calculate the damages it had incurred by reason of Agama's wrongful actions (collectively, the **"Stratitude/Agama Disputes"**)[5]. Although marketing efforts for the Debtor's assets began at the same time as Q4's in early 2017, the Stratitude/Agama Disputes made meaningful discussions with prospective bidders virtually impossible when the nature and extent of the Debtor's assets and operations remained unclear. In turn, this uncertainty also caused a delay in filing this Chapter 11 Case.

Once the Debtor was able to separate itself from Agama, Movant's and the Debtor's team's efforts to market and sell the Debtor's assets moved forward in earnest. However, Movant and the Debtor faced increasing customer and employee flight risks as the Q4 Chapter 11 Case progressed, given Q4's ownership of the Debtor, and the overall uncertainty of Q4's or the Debtor's ability to continue its operations. Working with Silverman Consulting, Inc. and Livingstone Partners, LLC, the Debtor's financial advisors and investment bankers, respectively,

---

[5] In the Debtor's Bankruptcy Schedules on file herein (Schedule B-75), the Debtor listed a claim against Agama in the approximate amount of $861,000. Agama has refused to pay all or any portion of such claim, and accordingly all collection efforts have been turned over to the Liquidating Trustee.

983766_1

Movant and the Debtor were able obtain a prospective stalking horse bidder sufficient to support an agreed Chapter 11 cash collateral order with BMO whereupon this Chapter 11 case was filed.

Throughout much of the Chapter 11 Case, Movant worked with the Debtor's management on virtually a daily basis to maintain the Debtor's operations in the ordinary course of its business in order to preserve the going concern value of the Debtor's assets for the benefit of its creditors. Movant's tasks were greatly complicated as a result of the irrevocable damage done to the Debtor's business operations and customer, employee and vendor relationships, following the arrest of the Criminal Defendants and the commencement of the Criminal Action, which was unforeseen by other interested parties employed by, and doing business with, the Debtor. Despite these challenges, as more fully described below, Movant has been successful in obtaining the entry of Court orders in the Chapter 11 Case authorizing the sale of all of the Debtor's assets used in the operation of its business as a going concern (**"363 Sale"**), and readying this Chapter 11 Case for a successful conclusion. **The gross proceeds received from the court approved sale of the Debtor's business and assets in the Chapter 11 Case total almost $2,000,000.**

Movant's efforts leading up to the confirmation of the Amended Plan streamlined the tasks remaining to expedite and maximize a distribution to the creditors in this estate. On August 22, 2018, Movant was successful in obtaining the confirmation of that certain Amended Joint Plan of Liquidation (**"Amended Plan"**) of Quadrant 4 System Corporation and Stratitude, Inc. and the Official Committee of Unsecured Creditors (the **"Committee"**) by order of the Court entered August 24, 2018 [Docket No. 527] (the **"Confirmation Order"**). The Amended Plan encompasses the liquidation and administration of the Companies' estates and remaining assets.

Movant's efforts throughout the Chapter 11 Case, largely focused on following primary areas and are more fully described later in this Motion:

A. Matters throughout the Chapter 11 Case to ensure the ability of the Debtor to continue its operations in the ordinary course of its business, and fully comply with all debtor-

983766_1

in-possession operational and reporting requirements under the Code;

B.  Efforts to market and solicit offers to purchase the Debtor's business and assets as a going concern, including (1) matters involving the formulation, negotiation and preparation of multiple competing asset purchase agreements, and the entry of related Court-approved bidding and sales procedures for the sale of the Debtor's business and assets as a going concern; and (2) matters involving the formulation, negotiation and preparation of an asset purchase agreement with JA Tech, Inc., the Court-approved purchaser of the Debtor's business and assets, and resolution of post-closing disputes arising under the underlying asset purchase agreement;

C.  Efforts to assist the Debtor in the formulation, negotiation and preparation, with the Committee, of the original Joint Plan of Liquidation (**"Plan"**) and preparation of the related Disclosure Statement both filed on June 1, 2018 [Docket Nos. 408 and 409, respectively] (**"Disclosure Statement"**), and subsequent efforts to formulate and prepare the necessary revisions thereto leading to the filing on July 6, 2018 of the Amended Plan and related Amended Disclosure Statement (**"Amended Disclosure Statement"**) [Docket Nos. 455 and 456, respectively], including (1) efforts to approve the adequacy of the Amended Disclosure Statement and commencement of the Amended Plan's confirmation and voting process; (2) efforts to implement the Court approved confirmation procedures for the Amended Plan and prepare the necessary ballot report, proposed confirmation order, and other  notices and documentation relating thereto; and (3) efforts leading to the Court's entry of the Confirmation Order, and related efforts to satisfy the requirements to achieve the Effective Date as set forth in the Amended Plan; and

983766_1

D. Matters involving the necessary wind down of the Debtor's facilities and affairs,
including preservation of books and records pending turnover to Amherst Partners,
LLC, the liquidating trustee under the Amended Plan (**"Liquidating Trustee"**).

Given the extensive commitment required of Movant throughout this Chapter 11 Case,
Movant and the other professionals appointed by the Court for the Debtor and Committee
received Court-authorized payments of monthly interim compensation during the Chapter 11
Case. On November 7, 2017, this Court entered that certain Order Establishing Procedures for
the Payment of Interim Compensation and Reimbursement of Expenses of Professionals in the
this Chapter 11 Case [Docket No. 224] (the **"Monthly Payment Procedures Order"**).

In accordance with the Monthly Payment Procedures Orders, Movant submitted eight (8)
monthly requests in the Chapter 11 Case covering the months of October, 2017 through May,
2018. Pursuant thereto, Movant received monthly payments of interim compensation in the
Chapter 11 Case in the aggregate amount of $154,054.43 and reimbursement of expenses in the
aggregate amount of $2,234.96, all as more fully set forth in the Interim Application
(collectively, the **"Monthly Compensation Payments"**). Pursuant to the Monthly Payment
Procedures Order, the amount of $38,342.50 of Movant's fees, in the aggregate, was held back
and not paid with the Monthly Compensation Payments pending the further order of the Court
(collectively, the **"Holdback"**).

On August 9, 2018, the Court entered an order granting the Interim Application in the
aggregate amount of $195,254.50, plus costs incurred of $2,234.96 [Docket No. 506]. Pursuant
thereto, Movant received a payment of $36,667.50 for the Holdback (**"Interim Application
Payment"**), with the balance of $1,675.00 being disallowed[6].

---

[6] The Court determined that services on behalf of the Debtor aggregating to $1,675.00 relating to a
motion to approve the Disclosure Statement and establish procedures for solicitation and voting on the
Plan were unnecessary, and accordingly determined such amount to be non-compensable.

983766_1

In total, as reflected herein, Movant has expended approximately **654.40 hours** of professional legal services during the Chapter 11 Case[7] (435.30 hours during the Interim Period plus 219.10 hours during the Final Period), and requests allowance and payment of final compensation for the Interim Period and Final Period, after the "Voluntary Adjustment" (defined below), in the amount of $285,992.50 for services rendered in this Chapter 11 Case, and reimbursement of ordinary and necessary expenses incurred in connection therewith in the amount of $3,203.56. After application of the "Prepayment" (defined below)[8], Monthly Compensation Payments, the Interim Application Payment, and the Voluntary Adjustment, the additional payment requested as final compensation in excess of the above items previously paid is $90,738.00 for services rendered in this Chapter 11 Case during the Final Period, and costs incurred in the amount of $968.60.

Movant submits that the efforts put forth and the results achieved amply support the allowance of the final compensation requested herein. Movant acted as consultant, negotiator, arbitrator, analyst, draftsman and legal advisor. Movant guided the Debtor through numerous issues that arose in this Chapter 11 Case. Movant's efforts did not come easily. As more fully set forth in the Interim Application and below, Movant expended significant efforts throughout this Chapter 11 Case and endeavored to maximize the value of all assets in this estate for the benefit of all creditors and other interested parties herein and minimize the expenses incurred in connection therewith. The distinctly adverse interests of many of the parties during this Chapter 11 Case confronted Movant with continual, time-consuming and formidable challenges which Movant addressed professionally, efficiently and expeditiously.

---

[7] Due to the joint administration of the Chapter 11 Cases, and the difficulty in exact division of certain common tasks required during the Final Period between the Companies' estates, many of such time entries reflected in this Motion have been split evenly between the Chapter 11 Cases.

[8] As of the Petition Date, Movant had a remaining advance payment retainer of $4,532.57 (**"Prepayment"**). Further details are available upon request.

983766_1

## II.

## BACKGROUND, HISTORY OF THE DEBTOR AND PRESENT STATUS OF CASE

A.    *The events leading to the filing of the Chapter 11 Case; the Q4 November 3, 2016 Acquisition of Stratitude and related Transactions with Agama, including the Credit Agreement with BIP Quadrant 4 System Debt Fund I, LLC ("BIP", and together with BMO, the "Secured Lenders") and Amendment to the BMO Loan; the BMO Forbearance Agreement; background of the Debtor's formation and operations; nature and history of its business and the "Stratitude/Agama Transactions" and "Stratitude/Agama Disputes" (defined below); pre- and post-Petition Date secured lending arrangements; as well as further factual support for this Motion, are set forth in more detail in: (1) the Declaration of Robert H. Steele in Support of Chapter 11 Petition and First-Day Motions [Stratitude Docket No. 9]; (2) the Amended Disclosure Statement; and (3) the Interim Application, among numerous other pleadings filed in the Chapter 11 Case. In the interest of brevity, all such information is not repeated herein, and the reader is encouraged to review all such documents for a complete understanding of the matters listed above.*

B.    **Administration of Chapter 11 Case**

During this Chapter 11 Case, Movant took steps to: (i) investigate the acts, conduct, assets, liabilities and financial condition of the Debtor; (ii) advise the Debtor of its rights, duties and obligations as debtor in possession under the Code; (iii) perform such duties as were necessary to maintain the viability of the Debtor within the confines of Chapter 11; (iv) assist in the Debtor's dealings with its secured and unsecured creditors, the Office of the United States Trustee in this District (**"UST"**), DOJ, SEC, other federal, state and local governmental agencies, employees, suppliers, customers and public shareholders; (v) coordinate activities,

10

communications, court hearings and other matters with the similar tasks in the Q4 Chapter 11 Case to reduce administrative costs in both Chapter 11 Cases; (vi) analyze the various means of concluding this Chapter 11 Case; and (vii) perform such other duties as were in the best interests of this estate.

The vast majority of the time expended in this Chapter 11 Case was rendered by Chad H. Gettleman, Nathan Q. Rugg (no longer with Movant as of on or about January 19, 2018), and following Mr. Rugg's departure, Erich S. Buck. The complexities of this Chapter 11 Case required the time and attention of Messrs. Gettleman, Rugg and Buck, often to the almost total preclusion of other matters. The efforts required and expended by members of Movant herein amply supports the allowance of final compensation requested herein.

## III.

### LEGAL SERVICES RENDERED

For ease of reference, Movant has identified and set forth seven (7) categories of legal services. Each category contains a narrative of the matters involved; a general description of the tasks performed; detailed time records in chronological order, with each attorney's time described therein, and the nature and purpose of such entries; and the result achieved or benefit to the estates, as required by In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987); In re Pettibone Corporation, 74 B.R. 293 (Bankr. N.D. Ill. 1987); and Matter of Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992).

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| A. Administrative Matters | 230.70 | $95,977.50 |
| B. DIP Financing/Cash Collateral | 33.60 | $15,734.00 |
| C. Asset Sale Efforts | 134.90 | $67,312.50 |
| D. Executory Contract Matters | 2.80 | $1,330.00 |
| E. Plan of Reorganization | 179.40 | $81,771.00 |

11

983766_1

| | | |
|---|---|---|
| F. Avoidance Actions | 0.30 | $142.50 |
| G. Fee Petition Preparation | 72.70 | $36,462.50 |
| **TOTAL** | **654.40** | **$298,730.00** |
| | | |
| **ADJUSTED TOTAL** | | **$285,992.50[9]** |

--------------------------------------------------------------------------------

   To facilitate the review of this Motion, the Statements of Services rendered per category during the Interim Period are attached as <u>Group Exhibits A - G</u> to the Interim Application, and during the Final Period are attached hereto as <u>Group Exhibits A, B, E, G and H</u> (no services in this Chapter 11 Case were performed during the Final Period in categories C, D, or F). Each Group Exhibit contains separate tabs for the periods of time represented by this Motion filed and served by Movant throughout the Interim Period pursuant to the Monthly Payment Procedures Order (collectively, the **"Monthly Statements"**) for each category, plus monthly statements for the months June - September, 2018, which were not submitted for monthly compensation pursuant to Court order. Not every category had services rendered during each month of the Interim Period or Final Period.

   A summary by category for time spent by Movant in the Chapter 11 Case follows. A review of these summaries shows the ebb and flow of Movant's efforts in each such category during the Chapter 11 Case.

   The total of all services, by month and category, rendered during the Interim Period and Final Period broken down by month, is summarized as follows:

## **TOTAL CHAPTER 11 CASE SERVICES BY CATEGORY AND MONTH**

### A.   **ADMINISTRATIVE MATTERS**

| **Description** | **Total Hours** | **Time Value** |
|---|---|---|
| October 13 – 31, 2017 | 57.50 | $25,131.50 |
| November 2017 | 41.30 | $18,966.50 |

--------------------------------------------------------------------------------

[9] See Footnote 6. See also Footnotes 10 and 11 on Pages 24 and 31 below (collectively, the **"Voluntary Reduction"**).

983766_1

| | | |
|---|---|---|
| December 2017 | 1.60 | $770.00 |
| January 2018 | 2.30 | $876.50 |
| February 2018 | 16.30 | $5,632.50 |
| March 2018 | 37.30 | $13,437.50 |
| April 2018 | 16.90 | $5,824.50 |
| May 2018 | 4.50 | $1,841.50 |
| June 2018 | 9.90 | $4,161.50 |
| July 2018 | 14.90 | $6,648.50 |
| August 2018 | 15.50 | $7,258.50 |
| September 2018 | 12.70 | $5,428.50 |
| **TOTAL CATEGORY A** | **230.70** | **$95,977.50** |

**B.**    **DIP FINANCING/CASH COLLATERAL**

| Description | Total Hours | Time Value |
|---|---|---|
| October 13 – 31, 2017 | 12.80 | $6,080.00 |
| November 2017 | 3.60 | $1,710.00 |
| December 2017 | 6.20 | $2,945.00 |
| January 2018 | 0.20 | $59.00 |
| February 2018 | 0.30 | $147.50 |
| March - April 2018 | 0.00 | $0.00 |
| May 2018 | 0.20 | $95.00 |
| June 2018 | 2.30 | $997.50 |
| July 2018 | 3.60 | $1,690.00 |
| August 2018 | 3.20 | $1,480.00 |
| September 2018 | 1.20 | $530.00 |
| **TOTAL CATEGORY B** | **33.60** | **$15,734.00** |

**C.**    **ASSET SALE EFFORTS**

| Description | Total Hours | Time Value |
|---|---|---|
| October 13 – 31, 2017 | 27.90 | $14,457.50 |
| November 2017 | 70.20 | $35,145.00 |
| December 2017 | 18.90 | $9,717.50 |
| January 2018 | 10.70 | $4,912.50 |
| February 2018 | 2.10 | $902.50 |
| March 2018 | 5.10 | $2,177.50 |
| April – Sept. 2018 | 0.00 | $0.00 |
| **TOTAL CATEGORY C** | **134.90** | **$67,312.50** |

13

983766_1

**D.**   **EXECUTORY CONTRACT ISSUES**

| Description | Total Hours | Time Value |
|---|---|---|
| October 13 – 31, 2017 | 0.80 | $380.00 |
| November 2017 | 2.00 | $950.00 |
| Dec. 2017 – Sept. 2018 | 0.00 | $0.00 |
| **TOTAL CATEGORY D** | **2.80** | **$1,330.00** |

**E.**   **PLAN OF REORGANIZATION** *(before adjustment per Footnote 10)*

| Description | Total Hours | Time Value |
|---|---|---|
| Oct. 13, 2017 - Dec. 2017 | 0.00 | $0.00 |
| January 2018 | 0.80 | $380.00 |
| February 2018 | 0.40 | $170.00 |
| March 2018 | 5.90 | $2,887.50 |
| April 2018 | 17.50 | $7,957.50 |
| May 2018 | 61.80 | $28,410.00 |
| June 2018 | 24.80 | $10,959.00 |
| July 2018 | 26.90 | $11,792.50 |
| August 2018 | 39.70 | $18,514.50 |
| September 2018 | 1.60 | $700.00 |
| **TOTAL CATEGORY E** | **179.40** | **$81,771.00** |

**F.**   **AVOIDANCE ACTIONS**

| Description | Total Hours | Time Value |
|---|---|---|
| Oct. 13, 2017 - Nov. 2017 | 0.00 | $0.00 |
| December 2017 | 0.30 | $142.50 |
| Jan. – Sept. 2018 | 0.00 | $0.00 |
| **TOTAL CATEGORY F** | **0.30** | **$142.50** |

**G.**   **FEE PETITION PREPARATION** *(before adjustment per Footnote 11)*

| Description | Total Hours | Time Value |
|---|---|---|

14

| | | |
|---|---|---|
| October 13 - 31, 2017 | 0.00 | $0.00 |
| November 2017 | 2.10 | $1,037.50 |
| December 2017 | 1.30 | $617.50 |
| January 2018 | 0.30 | $142.50 |
| February 2018 | 0.70 | $347.50 |
| March 2018 | 3.00 | $1,545.00 |
| April 2018 | 2.00 | $920.00 |
| May 2018 | 0.50 | $212.50 |
| June 2018 | 30.10 | $15,652.50 |
| July 2018 | 15.80 | $7,725.00 |
| August 2018 | 4.80 | $2,420.00 |
| September 2018 | 12.10 | $5,842.50 |
| **TOTAL CATEGORY G** | **72.70** | **$36,462.50** |

| | | |
|---|---|---|
| **TOTAL ALL CATEGORIES** | **654.40** | **$298,730.00** |

| | |
|---|---|
| **ADJUSTED TOTAL ALL CATEGORIES** | **$285,992.50** |

---------------------------------------------------------------------------------------------

## A.  ADMINISTRATIVE MATTERS

### TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 64.50 | 425/hr | $27,412.50 |
| NRD | 73.00 | 295/hr | $21,535.00 |
| CHG | 55.20 | 525/hr | $28,980.00 |
| NQR | 38.00 | 475/hr | $18,050.00 |
| **TOTAL** | **230.70** | | **$95,977.50** |

### 1.  *SERVICES RENDERED DURING INTERIM PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 31.80 | 425/hr | $13,515.00 |
| NRD | 68.40 | 295/hr | $20,178.00 |
| CHG | 39.50 | 525/hr | $20,737.50 |
| NQR | 38.00 | 475/hr | $18,050.00 |
| **TOTAL** | **177.70** | | **$72,480.50** |

983766_1

## 2. *SERVICES RENDERED DURING FINAL PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 32.70 | 425/hr | $8,242.50 |
| NRD | 4.60 | 295/hr | $1,357.00 |
| CHG | 15.70 | 525/hr | $13,897.50 |
| **TOTAL** | **53.00** | | **$23,497.00** |

Movant expended approximately 230.70 hours (see Group Exhibits A(1) - A(8) to the Interim Application and Group Exhibits A(1) - A(4) attached hereto) during the Chapter 11 Case in connection with Debtor's performance of the debtor-in-possession duties under Section 1107 of the Code and the numerous administrative and related matters arising therein. These matters included the many miscellaneous services that are usually required to be furnished on behalf of a debtor in Chapter 11 as well as many other matters that arose due to the complexity of the Debtor's affairs.

During the Final Period, Movant's efforts in this category continued to include (not entirely in chronological order):

i.  Continuing to work with the Debtor's management, other personnel, and professionals to ensure the Debtor's continued compliance with all of its right, duties and responsibilities;

ii. The prompt responses to inquiries which came from creditors and other parties in this Chapter 11 Case regarding various matters arising during and continuing throughout the Final Period;

iii. The rendering of timely responses to the inquiries of the UST, counsel for the Secured Lenders, counsel to the Committee and its financial advisors, and numerous other counsel

16

983766_1

for interested parties throughout the Final Period. Movant continued to maintain regular communications with the UST, Committee and Secured Lenders to discuss the Debtor's intentions related to concluding the Chapter 11 Case, and provided counsel for the UST, Committee and Secured Lenders with updates on all matters arising in the Chapter 11 Case and often sought input from each counsel on same, all of which combined for a more efficient administration of the Chapter 11 Case;

iv.  The timely filing and dissemination of the debtor-in-possession operating reports and other financial statements as well as the necessary assistance to the Debtor as required regarding same;

v.  The periodic review of the Claims Register maintained in this case by the Clerk of this Court, and further review of certain proofs of claims filed in this Chapter 11 Case which was required as part of Movant's ongoing monitoring of all relevant aspects of the Chapter 11 Case, including the successful resolution thereof;

vi.  Assisting in readying the estate for the successful completion of this Chapter 11 Case, including efforts to preserve and maintain books and records, and turnover to the Liquidating Trustee; and

vii. Numerous other miscellaneous tasks required for the Debtor's operations and compliance with its duties and obligations as debtor in possession throughout this Chapter 11 Case, and to determine alternative means of successfully concluding this Chapter 11 Case.

-------------------------------------------------------------------------------------------------------

*A detailed description of Movant's services in this Administrative Matters category rendered during the Interim Period, including the major concentration of administrative services performed by Movant during the Interim Period, is set forth in the Interim*

17

*Application, and is incorporated herein by express reference thereto. For purposes of convenience in reviewing this Motion, most of such descriptions will be summarized below, but not be repeated in detail herein.*

       1.      <u>**Pre-petition Wage and Benefit Motion**</u> *- Please see the Interim Application (Pages 30-33) for a more detailed description of Movant's services during the Interim Period concerning the Debtor's dealings with its approximate 100 employees, and the timely fulfillment of all of the Debtor's payroll and related obligations owing to its workforce and subcontractors.*

       2.      <u>**Critical Vendor Motion**</u> *- Please see the Interim Application (Pages 33-35) for a more detailed description of Movant's services during the Interim Period concerning the Debtor's Critical Vendor Motion for ten (10) essential vendors, without whom the Debtor would have been forced to close immediately.*

       3.      <u>**U.S. Department of Homeland Security**</u> *- Please see the Interim Application (Pages 35-37) for a more detailed description of Movant's services during the Interim Period concerning the Debtor's timely compliance with federal statutes covering its foreign workers.*

       4.      <u>**WARN Act Considerations**</u> *- Please see the Interim Application (Pages 37-39) for a more detailed description of Movant's services during the Interim Period concerning necessary WARN Act considerations throughout the Chapter 11 Case given the Debtor's precarious operating abilities in order to avoid unnecessary additional claims against the Debtor's estate.*

       5.      <u>**Preparation of Bankruptcy Schedules and Statement of Financial Affairs**</u> *- Please see the Interim Application (Pages 39-40) for a more detailed description of Movant's*

18

*efforts during the Interim Period in ensuring the preparation and timely filing of the Debtor's extensive Bankruptcy Schedules and Statement of Financial Affairs.*

6.      <u>**Key Employee Retention Bonus Motion**</u> *- Please see the Interim Application (Page 41) for a more detailed description of Movant's services concerning the Debtor's retention of key employees critical to the Debtor's operation and successful conclusion of this Chapter 11 Case.*

7.      <u>**Monthly Debtor in Possession Operating Reports**</u>*. Please see the Interim Application (Pages 41-42) for a more detailed description of Movant's services during the Interim Period concerning the Debtor's preparation, timely filing and dissemination of the Debtor's debtor in possession operating reports and other financial statements.*

8.      <u>**Retention of Necessary Professionals**</u> *- Please see the Interim Application (Pages 42-44) for a more detailed description of Movant's services concerning the Debtor's retention of necessary professionals needed to successfully undertake and complete this Chapter 11 Case, which included the specialized services of: (a) Livingstone Partners, LLC, as the Debtor's investment bankers to assist and advise the Debtor and its other professionals in the marketing and sale of the Debtor's business as a going concern; (b) Silverman Consulting, Inc., as the Debtor's management and operational consultants with their primary responsibilities including assisting the Debtor in its day-to-day operations and financial affairs, negotiating and handling financing arrangements with the Secured Lenders, assisting sales and marketing efforts, and numerous other tasks that largely contributed to the successful conclusion of this Chapter 11 Case; and (c) Nixon Peabody, LLP, as the Debtor's labor, corporate, securities compliance, intellectual property, and tax special counsel.*

983766_1

9.      ***Claims Bar Date Matters*** - *Please see the Interim Application (Pages 44-45) for a more detailed description of Movant's services during the Interim Period concerning the establishment and notice to creditors of the claims bar dates set forth in this Chapter 11 Case.*

10.      ***Termination of 401(k) Plan*** - *Please see the Interim Application (Pages 46-48) for a more detailed description of Movant's services during the Interim Period concerning the successful termination of the Debtor's IRS qualified 401(k) plan for the benefit of approximately forty one (41) of its employees.*

## B. DEBTOR IN POSSESSION/CASH COLLATERAL

### TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 7.30 | 425/hr | $3,102.50 |
| NRD | 0.20 | 295/hr | $59.00 |
| CHG | 3.50 | 525/hr | $1,837.50 |
| NQR | 22.60 | 475/hr | $10,735.00 |
| **TOTAL** | **33.60** | | **$15,734.00** |

### 1. *SERVICES RENDERED DURING INTERIM PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 0.20 | 425/hr | $85.00 |
| NRD | 0.20 | 295/hr | $59.00 |
| CHG | 0.30 | 525/hr | $157.50 |
| NQR | 22.60 | 475/hr | $10,735.00 |
| **TOTAL** | **23.30** | | **$11,036.50** |

983766_1

## 2. *SERVICES RENDERED DURING FINAL PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 7.10 | 425/hr | $3,017.50 |
| CHG | 3.20 | 525/hr | $1,680.00 |
| **TOTAL** | **10.30** | | **$4,697.50** |

Movant expended approximately 33.60 hours (see <u>Group Exhibits B(1) - B(6) attached to</u> <u>the Interim Application and Group Exhibits B(1) - B(4) attached hereto</u>) during the Chapter 11 Case in matters involving the Debtor's need for debtor-in-possession financing and the use of cash collateral. These efforts were required for the Debtor to remain a viable operating entity pending the 363 Sale of the Debtor's business during the Interim Period, and the continuing wind-up of the Debtor's affairs thereafter throughout the Final Period leading to the Effective Date and turnover of all matters concerning the Debtor to the Liquidating Trustee on or about the date thereof.

*Please see the Interim Application (Pages 60-64) for a more detailed description of Movant's services during the Interim Period concerning the successful formulation and implementation of use of cash collateral, and obtaining of debtor-in-possession financing from BMO under the terms of its $25 million loan facility, and other credit accommodations from BMO and BIP pursuant to the terms and conditions of orders of this Court.*

Throughout the Final Period, Movant continued to assist Silverman Consulting in its efforts to prepare the budgets required to obtain the necessary use of cash collateral for payment of all prospective allowed administrative claims in the Chapter 11 Case. As mentioned, payment of every allowed administrative claim in the Chapter 11 Case should <u>not</u> impact the unsecured creditors in the Chapter 11 Case as all such funds are being advanced by BMO under prior court

983766_1

orders, and all unused funds, if any, will be returned to BMO. Throughout the Chapter 11 Case,
and continuing up to and including the Effective Date and the anticipated time of final allowance
of this Motion and all other administrative claims, the Debtor has fully and timely paid, and is
anticipated to be able to fully and timely pay, all debtor-in-possession obligations when and as
they have occurred and/or will be allowed.

## C.  ASSET SALE EFFORTS

**TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE (all during Interim Period)**

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| HLA | 3.40 | 525/hr | $1,785.00 |
| ESB | 12.90 | 425/hr | $5,482.50 |
| CHG | 74.20 | 525/hr | $38,955.00 |
| NQR | 44.40 | 475/hr | $21,090.00 |
| **TOTAL** | **134.90** | | **$67,312.50** |

Movant expended approximately 134.90 hours (see Group Exhibits C(1) - C(6) attached
to the Interim Application) during the Chapter 11 Case (all during the Interim Period) in matters
involving the extensive asset sale efforts for the Debtor's business as a going concern. In all, the
gross proceeds received from the sale totaled approximately **$2,000,000.**  At the outset of the
Chapter 11 Case, it was possible, if not likely, all of such asset values could be next to nothing.

*Please see the Interim Application (Pages 49-55) for a more detailed description of
Movant's extensive services during the Interim Period concerning the successful marketing
and sales of the Debtor's business in March, 2018* ("**363 Sale**") [Docket No. 218]. In sum,
Movant's efforts assisted in the Debtor obtaining a $1,500,000 stalking horse bid which
commenced the 363 Sale process, and obtaining two more qualified bids, the largest being for
$1,700,000, plus an additional amount for certain outstanding accounts receivable, which was

983766_1

promptly approved by Court order dated December 1, 2018 [Docket No. 253]. The account receivable adjustment created complications at the auction and subsequent closing and post-closing period, which Movant successfully addressed helping the estate receive total sales proceeds of **$1,778,820.25.** Movant's successful completion of the 363 Sale for the Debtor's assets was another significant factor in achieving the successful conclusion to both Chapter 11 Cases.

## D.  EXECUTORY CONTRACT MATTERS

**TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE *(all during Interim Period)***

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| NQR | 2.80 | 475/hr | $1,330.00 |
| **TOTAL** | **2.80** | | **$1,330.00** |

*Movant expended approximately 2.80 hours (see <u>Group Exhibits D(1) – D(2) attached to the Interim Application</u>) during the Chapter 11 Case (all during the Interim Period) in matters involving the Debtor's only unassumed executory contract and unexpired lease, being its Fremont, California facilities. Despite numerous other executory contracts at the outset of the Chapter 11 Case, Movant's successful consummation of the 363 Sale resulted in the buyer of the Debtor's business assets assuming all of said contracts, thus saving the estate from significant rejection damages.*

## E.  PLAN OF REORGANIZATION

**TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE**

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 108.50 | 425/hr | $46,112.50 |

983766_1

| ATTORNEY | HOURS | RATE | VALUE |
|----------|-------|------|-------|
| NRD | 6.80 | 295/hr | $2,006.00 |
| CHG | 64.10 | 525/hr | $33,652.50 |
| **TOTAL** | **179.4** | | **$81,771.00** |
| **ADJUSTED TOTAL** | | | **$79,033.50**[10] |

## 1. *SERVICES RENDERED DURING INTERIM PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|----------|-------|------|-------|
| ESB | 47.50 | 425/hr | $20,187.50 |
| NRD | 3.50 | 295/hr | $1,032.50 |
| CHG | 35.40 | 525/hr | $18,585.00 |
| **TOTAL** | **86.40** | | **$39,805.00** |

## 2. *SERVICES RENDERED DURING FINAL PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|----------|-------|------|-------|
| ESB | 61.00 | 425/hr | $25,925.00 |
| NRD | 3.30 | 295/hr | $973.50 |
| CHG | 28.70 | 525/hr | $15,067.50 |
| **TOTAL** | **93.00** | | **$41,966.00** |

---

[10]The Adjusted Total value of services reflects the Court's disallowance of the sum of $1,675.00 of the amounts sought in the Interim Application by its order entered August 10, 2018 [Docket No. 506], plus approximately 2.5 hours of services rendered by Movant during the Final Period, representing $1,062.50, (identical amount deducted in Movant's Q4 final fee petition), which Movant has determined would similarly be deemed unnecessary by the Court and is being voluntarily deducted from the final compensation sought herein. In doing so, Movant has attempted to identify what portions of the time entries in question relate to the preparation of the underlying motion which the Court found unnecessary versus the preparation of the underlying extensive order and exhibits thereto which the Court entered without modification, and thus should be considered compensable.

983766_1

Movant expended approximately 179.40 hours (see <u>Group Exhibits E(1) - E(5) attached</u> <u>to the Interim Application and Group Exhibits E(1) - E(4) attached hereto</u>) during the Chapter 11 Case in matters involving analysis of potential plans of liquidation; the extension of all necessary deadlines under the Code; the formulation of possible treatment of various different proposed classes of claims; the preparation with the Committee of the Plan and Amended Plan; the preparation of the Disclosure Statement and Amended Disclosure Statement; the review of the Liquidating Trust Agreement; the approval of the adequacy of the Amended Disclosure Statement; ensuring proper service of notice to all creditors and other interested parties in the Chapter 11 Cases, including the Court approved confirmation package containing ballots and related notices; facilitating the confirmation process; obtaining the entry of the Confirmation Order; performing such duties as were necessary post-confirmation to satisfy all requirements for the Amended Plan to become effective; and transitioning all matters to the Liquidating Trustee in connection therewith.

***Please see the Interim Application (Pages 57-63) for a more detailed description of Movant's extensive services during the Interim Period concerning all Plan of Reorganization matters.***

1. **Plan of Reorganization services rendered during the Final Period**

The filing of the Plan and Disclosure Statement occurred on the first day of the Final Period, June 1, 2018. Accordingly, Movant's efforts throughout the Final Period were focused on an orderly and efficient confirmation process, which Movant successfully achieved with the entry of the Court's Confirmation Order on August 22, 2018.

Following the filing of the Plan and Disclosure Statement, Movant received communications from counsel for the SEC and the UST reflecting their respective concerns over certain of the proposed release, indemnity and exculpation provisions in the Plan. Movant analyzed each agency's comments, had extensive discussions concerning same with the Committee's counsel and the Debtor's management, and formulated the Debtor's responses to

25

the issues raised. Movant had further communications with counsel for the Committee, and the SEC and UST seeking to formulate a mutually acceptable resolution of these issues in order to avoid unnecessary contested proceedings on the adequacy of the Disclosure Statement or confirmation of the Plan.

Movant and the Committee's counsel attended a meeting at the offices of the UST to discuss revisions to the subject provisions to address the UST's concerns, and also had further communications with the SEC's counsel regarding a resolution of the SEC's issues. Ultimately, Movant, with the Debtor's authorization, and the Committee, were able to reach agreements with both the UST and SEC on the Plan provisions in question.

Movant drafted a proposed amended plan of liquidation and circulated same to all parties. Further discussions ensued to formulate proposed agreed language, and Movant prepared additional revised drafts for all parties' review. Ultimately, Movant, with the help of Committee counsel, was able to prepare the Amended Plan and Amended Disclosure Statement, each of which were filed on July 6, 2018 [Docket Nos. 455 and 456, respectively].

Throughout the balance of July 2018, Movant rendered significant services in connection with the Court's ultimate approval of the Amended Disclosure Statement and Amended Plan, including identifying all necessary notice parties and determining the proposed treatment of scheduled versus filed claims and bar date noticed parties for purposes of additional notice; addressing newly discovered issues regarding governmental unit claim bar date notices; addressing issues raised by the Texas Comptroller's Office, and a substantial claim filed by the Arkansas Department of Finance & Administration (more fully described below); preparing for the hearing on adequacy of the Amended Disclosure Statement; analyzing multiple considerations for the treatment for voting purposes of scheduled and/or filed claims, including those identified as likely to be objected to in the Amended Disclosure Statement; preparing and obtaining the entry of the highly detailed Court order approving the requested confirmation procedures which was entered on July 12, 2018 [Docket No. 463] (**"Confirmation Procedures Order"**); ensuring that the necessary materials would be properly served on each group of

983766_1

parties receiving ballots under the Confirmation Procedures Order; and beginning preparation for the scheduled August 22, 2018 confirmation hearing.

In preparing the final Confirmation Procedures Order, Movant was required to analyze the multiple groups of parties who would receive different notices under the Confirmation Procedures Order, and determine which groups would receive ballots and/or which types of ballots. To this end, Movant set forth the Debtor's proposal for, among other things, the determination of the allowance of claims for voting purposes, including late-filed claims, claims listed or filed entirely, or partially, as contingent, unliquidated or undetermined; the means of estimation of claims if necessary; the clarification for creditors of the Companies and Q4 shareholders to file ballots in the appropriate Chapter 11 Case, including combined ballots; challenges to allowance of claims or interests for voting purposes; identifying the requirements for votes to be counted; establishing the treatment of rejected ballots; determining the impact of returned solicitation packages and notices; and addressing the possibility of the need for the Debtor to make non-substantive or immaterial modifications to the documents being sent as part of the solicitation package, including the ballots.

## 2.  Arkansas Department of Finance & Administration

Movant encountered a highly unusual and unexpected issue when the Arkansas Department of Finance & Administration (**"AR Agency"**) filed a proof of claim in the Chapter 11 Case on June 28, 2018 alleging taxes, penalties and interest owing by the Debtor for the 2013 and 2014 tax years in the total amount of $874,685.63, of which $758,537.32 was entitled to priority status ("**AR Claim**"). With the aggregate amount of ALL other governmental unit tax claims being approximately $30,000, the AR Claim threatened to derail the confirmation of the Amended Plan and force the Chapter 11 Case into a Chapter 7 on the basis that the Amended Plan could no longer provide for full payment of governmental unit priority tax claims as required under the Code.  Although a portion of Movant's services concerning the AR Claim were recorded in this Chapter 11 Case as the resolution of this matter directly impacted the

27

983766_1

confirmation of the Amended Plan of both Companies, the majority of such services were recorded in the Q4 Chapter 11 Case statements of services rendered attached to Movant's final application for compensation therein filed concurrently herewith (**"Final Q4 Fee Application"**). A full description of Movant's services in successfully having the AR Claim reduced by _over 96%_ to $31,073.98 is set forth in the Final Q4 Fee Application and for the sake of brevity will not be repeated herein. The result of Movant's efforts was that the confirmation of the Amended Plan was no longer impacted by the AR Claim.

### 3.   Confirmation of Amended Plan

During August 2018, Movant continued to expend significant efforts in preparing for, facilitating, monitoring, and achieving the confirmation of the Amended Plan on August 22, 2018 [Docket No. 527]. Movant's efforts in this respect included: (a) ongoing communications with counsel for the Committee, as the co-proponent of the Amended Plan, concerning necessary noticing requirements, voting status and confirmation hearing preparation; (b) ongoing review of ballots, and communications with the Secured Creditors and various unsecured creditors known to be supporting the Amended Plan to ensure the timely submission of their ballots; (c) preparation of the draft order confirming the Amended Plan and circulation to all interested counsel of same, and preparation of further revisions based on comments received from counsel for the UST, SEC and the Committee; (d) preparation for the confirmation hearing, including preparation of an offer of proof and testimony of Mr. Steele and Mr. Mansoor (of Silverman Consulting) in support of confirmation, and analysis of jurisdictional provisions under the Amended Plan and Liquidating Trust Agreement; (e) preparation of the required Report of Balloting and related documents filed on August 17, 2018 [Docket No. 518]; (f) review of the means of post-confirmation notice to creditors and other interested parties; and (g) related matters.

At the August 22, 2018 confirmation hearing, the Court reviewed the draft confirmation order, and after discussions on the record with counsel present, directed revisions thereto. Due to

983766_1

scheduling concerns, it appeared that the confirmation hearing would be postponed until after Labor Day unless Movant could immediately turn around a revised draft of the order so that all parties could come back to court that afternoon. Movant advised the Court that everyone very much wanted to have the Amended Plan confirmed that day and promised to return a revised draft order in the shortened time allotted. Immediately thereafter, Movant met with the Committee counsel to review the Court's comments, made the necessary changes and served all counsel present in the morning and the Court with a revised draft of the proposed order. At the continued hearing on the afternoon of the 22nd, the Confirmation Order was entered with one further minor revision and the Amended Plan was confirmed.

Thereafter, Movant undertook all steps necessary to ensure that the conditions to the Amended Plan's Effective Date would be timely met. All such conditions were satisfied, and the Amended Plan's Effective Date became September 13, 2018, consistent with the timeframe projected by the Debtor in its Amended Disclosure Statement.

## F.  AVOIDANCE ACTIONS

### SERVICES RENDERED DURING THE CHAPTER 11 *CASE (all during the Interim Period)*

| ATTORNEY | HOURS | RATE | VALUE |
|----------|-------|------|-------|
| NQR | 0.30 | $475/hr | $142.50 |
| **TOTAL** | **0.30** | | **$142.50** |

Although established by Movant as a separate category at the outset of the Chapter 11 Case in anticipation of possible activities, Movant was required to expended only approximately 0.30 hours (see Exhibit F(1) attached to the Interim Application), in connection with a very brief review of potential avoidance actions, all of which will be fully examined by the Liquidating Trustee.

983766_1

## G.  FEE PETITION PREPARATION

**TOTAL SERVICES RENDERED DURING CHAPTER 11 CASE**

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 15.60 | 425/hr | $6,630.00 |
| CHG | 54.20 | 525/hr | $28,455.00 |
| NQR | 2.90 | 475/hr | |
| | | | $1,377.50 |
| **TOTAL** | **72.70** | | **$36,462.50** |

| | | |
|---|---|---|
| **TOTAL NET OF $10,000 VOLUNTARY REDUCTION** | | **$26,462.50** |

### *1.  SERVICES RENDERED DURING INTERIM PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 2.30 | 425/hr | $977.50 |
| CHG | 4.70 | 525/hr | $2,467.50 |
| NQR | 2.90 | 475/hr | $1,377.50 |
| **TOTAL** | **9.90** | | **$4,822.50** |

### *2.  SERVICES RENDERED DURING FINAL PERIOD*

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| ESB | 13.30 | 425/hr | $5,652.50 |
| CHG | 49.50 | 525/hr | $25,987.50 |
| **TOTAL** | **62.80** | | **$31,640.00** |

Movant expended approximately 62.80 hours during the Chapter 11 Case (see <u>Group Exhibits G and G(1) - G(7) attached to the Interim Application and Group Exhibits G(1) - G(4) attached hereto</u>) in the preparation of the Monthly Statements, the Interim Application and this Motion. Throughout the Chapter 11 Case, Movant successfully dealt with a multitude of different matters. As courts have often noted, in cases as complex as this Chapter 11 Case, the

30

vast majority of a debtor's attorney's work is conducted outside of the court room. Such was the case here. Movant's extensive efforts were successful in resolving the significant majority of all matters that arose without the necessity of costly, protracted and uncertain court hearings, all of which inured to the benefit of all of the creditors herein and other interested parties.

Due to the complexities of this Chapter 11 Case, Movant's substantial commitment and services rendered during the eleven months of the Chapter 11 Case cannot be adequately understood without the detail provided in the substantial Interim Application and this Motion. Movant believes that the only way in which its request for final compensation in this Motion can be fully understood is by laying out the extensive areas of services which Movant rendered. Not surprisingly therefore, the efforts needed to properly reflect such services in the Interim Application and this Motion, in the aggregate, have taken significant time[11]. As noted above, due to the Chapter 11 Cases being jointly administered, the inability to specifically divide certain common tasks between each case resulted in certain time entries being evenly divided between the Chapter 11 Cases. In particular, this was the situation in the time expended in June and July of the Final Period for the preparation of the Interim Application in this Chapter 11 Case and the interim application in the Q4 Chapter 11 Case (**"Q4 Interim Application"**) [Docket No. 452], also granted by order of the Court entered August 10, 2018 [Docket No. 505]. Certain portions of the time entries therein applied equally to both Companies. Movant is likewise filing the Final Q4 Fee application concurrently herewith. As such, Movant believes it is appropriate that the time expended in the Fee Petition Preparation categories in this Motion be viewed as a whole, together with the Fee Petition Preparation time entries in the Final Q4 Fee Application. Doing so

---

[11] As an accommodation to the Debtor's estate, and in recognition of the extensive nature of the Interim Application and this Motion, Movant has proposed a voluntary reduction in the Fee Petition Preparation compensation requested of $10,000.00.

983766_1

will show that the total fees sought for the preparation of all interim and final fee petitions filed by Movant in the Chapter 11 Cases, net of the voluntary reduction in this category in both cases, will approximate 7.3% of the overall aggregate final compensation sought in the Chapter 11 Cases.

This Motion fully complies with the guidelines established by the Court in the cases of In re Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987), and In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987). In that regard, Movant is entitled to receive compensation for the preparation of this fee petition in accordance with In re NuCorp Energy, Inc., 764 F.2d 655 (9th Cir. 1985).

As will be seen in the exhibits hereto, there has been some necessary and unavoidable duplication of effort between members of Movant during this Chapter 11 Case. Any such duplication has been necessitated by the exigencies, size and complexity of the Chapter 11 Case. Movant recognizes the general rule disallowing duplication of fees by member of a single firm, but submits that in the Chapter 11 Case, certain duplication falls within recognized exceptions to this general rule. "While conferring may be necessary, fees for only one attorney are allowable *unless an adequate explanation of the necessity of each attorney's participation is provided.*" In re Vancil Contracting, Inc., 2008 WL 207533 at *4 (Bankr. C.D. Ill. 2008) (citing In re Wiedau's, Inc., 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987)). This District later fleshed out this exception and provided a non-exhaustive list of dually compensable conferences. See In re Adventist Living Centers, Inc., 137 B.R. 701, 716-17 (Bankr. N.D. Ill. 1991). The types of conferences include conferences where the participating attorneys are all active, and not passive, participants in the meeting. Movant has had multiple *settlement/litigation conferences* with the opposing attorneys in the Chapter 11 Case where all of Movant's attorneys were in fact active in the conference. The courts have allowed all attorneys to bill for their time in such instances.

983766_1

32

Movant's members have had numerous *status conferences* where one attorney has advised another as to matters pending in the Chapter 11 Case and often assigned or divided future work to be performed. Because status conferences incorporate input from everyone involved, the courts have allowed all attorneys to charge such time. Movant has had numerous *strategy conferences* where Movant's members have all actively participated in determining the course of the Chapter 11 Case in all of the different categories of services reflected herein. Because strategy conferences involve input from all parties, the courts have allowed allow all attorneys present to bill for their time. Pursuant to <u>Adventist Living Centers</u> intraoffice conferences will be compensable to extent that each attorney present is active and participates.

Another type of instance in which an intraoffice conference may be compensable is when each participating attorney has distinct responsibilities in the case and therefore separate justification for attendance at a conference. In numerous instances in the Chapter 11 Case, one of Movant's attorneys handled matters and rendered services relating to a specific issue, while another was responsible for reviewing and drafting relevant documents. In those instances, courts have allowed conferences attended by both to be billed by both. See <u>In re GSB Liquidating Corp.</u>, 1995 WL 521528, at n.12 (Bankr. N.D. Ill. 1995).

In light of the extensiveness of the Interim Application and this Motion, and the nature and necessity of Movant's comprehensive efforts, Movant represents to this Court that in those instances where Movant is seeking duplicative compensation, Movant has throughout the Chapter 11 Case, to the fullest extent practicable, conscientiously avoided duplicative billing and committed only one attorney's time to each task. However, due to circumstances unique to each task and to the Chapter 11 Case generally, some collaborative work was necessary, and in fact more economical than fragmentation, and overall beneficial to the Debtor and its estate. Movant further submits that in cases of this magnitude and complexity, it is often more economical and sometimes necessary for multiple attorneys to attend internal and external meetings or hearings

to facilitate communication of information and coordinate strategy than to relay the information from attorney to attorney and risk miscommunication detrimental to the client. Under such circumstances, such representation has been approved (see Adventist Living Centers).

## IV.

## STANDARDS FOR REVIEW OF MOTION

The Court need look no further than Local Rule 5082-1 and the opinions in In re Pettibone Corp., 74 B.R. 293 (Bankr. N. D. Ill. 1987), and In re Wildman, 72 B.R. 700 (Bankr. N. D. Ill. 1987), for the applicable standard of review of the Motion.   The court in Pettibone stated:

> Under Section 330 of the Bankruptcy Code, professionals applying for fees must demonstrate in writing that their services were (1) actual; (2) necessary, and (3) reasonable.  Once services have been performed, Bankruptcy Rule 2016 requires that:
>
>> A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court a Motion setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.
>
> These detailed applications establish the "actual", while an accompanying narrative explanation of the "how" and "why" establishes the "necessary."
>
> The primary objective of any fee petition is to reveal sufficient data to enable the Court to determine whether the services rendered were reasonable, actual and necessary.

Pettibone Corp., 74 B.R. at 301 (citations omitted) (emphasis in original).

While a court has wide discretion in reviewing a fee petition, such authority must be dispensed with great care and fairness, Wildman, 72 B.R. at 705, while keeping in mind that the well accepted goal is to encourage and induce capable attorneys to practice in the bankruptcy court. Pettibone, 74 B.R. at 306.

983766_1

In analyzing a fee petition, a court must determine "what the lawyer would receive if he were selling his services in the market rather than being paid by court order." In re Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992). Moreover, as stated in Boston and Maine Corporation v. Moore (In re Boston and Maine Corporation), 726 F.2d 2 (1st Cir. 1985), the Court should focus on the benefits to the estates and the quality of the performance of counsel in the context of the case as a whole:

> Given these circumstances, it is important for a court to maintain "a sense of overall proportion," Gabriel v. Southworth, 712 F.2d 1505, 1507 (1st Cir. 1983), and not "become enmeshed in meticulous analysis of every detailed facet of the professional representation," Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) ("Lindy II"). It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that B&M would not have enjoyed the success it did had its counsel managed matters differently. Fee-cutting "ideally should be tempered with a view towards the need for the services at the time they were rendered." In re Casco , 25 B.R. at 756

Id. at 10 (emphasis in original).

Movant has endeavored to prepare this Motion and the exhibits thereto in accordance with the standards and guidelines outlined in Pettibone and Wildman:

1.   **Itemized Daily Entries** - Categories A through G contain detailed entries listing the subject activity; the date; the time spent; the nature of the services rendered; and the purpose for same. Explanations are included to inform the reader of the circumstances giving rise to the activity.

2.   **Telephone Conferences** - Telephone conferences are detailed with disclosure of the topic of discussion, as well as the person called and reason therefor. Telephone conferences are cost beneficial to the estates as they provide the most efficient way to handle the numerous matters involved.

3.    **Meetings and Office Conferences** - Movant spent considerable time in meetings and conferences as a means of performing the services required. Where a meeting is described, the persons present and topics discussed are set forth.

4.    **Drafting** - The drafting of documents, emails, letters, motions and orders is clearly delineated. The complexity of the matters and the numerous parties involved often dictated many revisions.

5.    **Legal Research** - While the members of Movant have devoted substantially all their professional careers to the practice of commercial law, bankruptcy, insolvency and corporate reorganizations, legal research is essential on numerous occasions in cases of this magnitude, as it was in this Chapter 11 Case. A lawyer who does not spend considerable time in the law library is doing a disservice to his client, and will soon find out that the rapidly evolving field of bankruptcy law is leaving him or her behind. Indeed, the Seventh Circuit has recognized the need and requirement for constant research and preparation by attorneys, even in their own specialized areas of concentration. See Continental Securities, 962 F.2d at 570 (when addressing the fee request of securities lawyers in a class action securities lawsuit, the Court stated that "no one carries the whole of federal securities law -- not only the many detailed statutes and regulations but the thousands of decided cases -- around in his head, and a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit").

6.    **Minimum Time** - Movant does not apply a uniform amount of time to a particular activity. The time entries herein have been kept on a tenth of an hour basis. The Court should be sensitive, however, to the reality that bankruptcy cases do not always lend themselves to meticulous time keeping. Oftentimes, a lawyer's need to concentrate, the press of time and the emotion and energy involved, interfere with time keeping with exacting detail. Great care has been utilized to keep reasonably accurate time. Movant asks this Court to bear in mind the "big picture" context hereinbefore described by the First Circuit Court of Appeals in the Boston and Maine case.

983766_1

7.      **Lumping** - Movant has endeavored to avoid grouping a number of unrelated activities into the same time entry. The Court should, however, keep in mind that in a case of the complexity of this Chapter 11 Case, meetings or telephone conferences will involve the discussion of numerous topics in which case Movant has allocated the time incurred to the appropriate categories as accurately as practicable. Also, and several telephone calls may be made to a number of parties in rapid succession on one or more topic areas. The entries elaborately describe each activity with identification of the party, the purpose of the activity and in many cases, the necessity thereof. Such grouping is unavoidable, but the informative explanations herein serve to further describe and delineate the time spent.

## V.

## BILLING JUDGMENT AND AVOIDANCE
## OF DUPLICATION OF SERVICES

.       As set forth in In re Pettibone, 74 B.R. at 303, Section 330 of the Code provides that compensation for actual and necessary services makes the exercise of billing judgment "mandatory" in bankruptcy fee petitions. The estates should not bear the burden of duplication of efforts which should be avoided by the exercise of good billing judgment.

Movant is a small firm, which by definition prevents any significant duplication of efforts. Herein, Chad H. Gettleman, Nathan Q. Rugg, and upon Mr. Rugg's departure, Erich S. Buck, have performed the vast majority of services in connection with the representation of the Debtor. The extensive efforts required in this Chapter 11 Case have, of necessity, also involved most of the other members of Movant. Every effort has been made to delineate specific tasks and in so doing, to prevent an unnecessary overlap in representation. While certain matters required joint consultations, duplication has been judiciously avoided. When two attorneys were needed, they were only involved due to the great complexity of a given matter, the press of business, or if another member of the firm was handling a matter in some way connected with another activity. So, too, as with other matters, certain interoffice conferences between partners

37

of the firm or a partner and an associate occurred as were necessary and beneficial for the estate. The benefit to the estate from these activities resulted in an associate being able to perform certain services which brought with it the lowered rates of the associate and also the associate's greater availability to perform such services. It is not realistic to expect associates with limited experience in a case to operate as efficiently as a partner with greater experience not only in a given case but in the practice of law. Accordingly, some joint participation in cases of this magnitude and activity is unavoidable. In fact, however, such overlap ultimately resulted in a more efficient and economic expenditure of time.

Practically speaking, a small firm such as Movant's does not have the luxury of having more than one attorney generally handle any particular task. So, too, in cases with issues as complex as those presented to Movant here, at times certain problems required the collective judgment of the attorneys in the firm. Again, however, a review of the detailed statement of services rendered by Movant in this Chapter 11 Case reflects that duplication of services, albeit at times necessary, was kept to an absolute minimum and in fact generated cost benefits to the estates. The appropriateness of the billing judgment of Movant can best be supported by the following analysis of the factors set forth in In re Pettibone:

1.      **Individual Responsibility** - A review of the Interim Application and this Motion will show that a minimal amount of conferring occurred in the Chapter 11 Case overall. When interoffice conferences were required, they were required only to facilitate the coordination of effort and avoid the duplication thereof, and kept to a minimum length of time. The Court will find few lengthy interoffice conferences given the complexity of this Chapter 11 Case. Movant has prepared this Motion to comply with the billing guidelines for office conferences as set forth in In re Adventist Living Centers, Inc., 137 B.R. 692, 697 (Bankr. N.D. Ill. 1991). In conformity with Adventist Living Centers, Movant has billed only "active" attorney's time for office conferences. However, if the office conference constituted (a) a "status" conference wherein one attorney advises another as to matters pending in a case and often assigns future work to be

983766_1

performed, or (b) a "strategy" conference wherein one or more attorneys determine the course of action to be taken, then Movant has billed for all attorneys involved in the conference.

2.    **Court Appearances and Meetings** - In the approximately 654.40 hours reflected in the Interim Application and this Motion, there are few instances where more than one attorney attended a particular court appearance, with the exception of various major hearings. Meetings for particular matters have with few exceptions been attended by only one attorney. On certain occasions, it was necessary for more than one attorney to attend a meeting. The use of more than one attorney was precipitated by the fact that such meetings usually led to the delegation of several different activities, or involved discussions concerning information that could best be gained firsthand.

3.    **Appropriate Level of Skill** - Herein, Messrs. Gettleman, Rugg and Buck have had a significant role in the representation of the Debtor in those areas requiring the services of more experienced practitioners. Where appropriate, however, the legal work was handled by other members of the firm to take advantage of lower billing rates.

4.    **Legal Research** - Most of the legal research was performed by members of the firm with lower hourly rates to further reduce the amount of fees in this Chapter 11 Case.

5.    **Document Review** - A careful review of the detailed time entries will reflect that there are few entries for one attorney reviewing the work product of another attorney. In those instances where such examination appears, it was necessary as a result of the press of time and complexity of the matter involved. It is both necessary and expected that such complex legal work will involve a certain amount of analysis by more than one attorney. The Court should be advised, however, that these instances are limited, and at no time was such a review simply a matter of interest. Again, pursuant to the requirements of Adventist Living Centers, only the active attorney's time is billed in this Motion for a document review conference.

# VI.

## QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO ACCEPTANCE OF THESE CASES; AND COST OF COMPARABLE SERVICES

Adelman & Gettleman, Ltd. was established in 1983 and has been listed in The Martindale-Hubbell Bar Register of Preeminent Lawyers since approximately 1985. The firm is the oldest Chicago commercial bankruptcy boutique firm and the only one having its lawyers recognized, for many years, in Naifeh and Smith's "The Best Lawyers in America", Woodward/White; "America's Leading Lawyers for Business" by Chambers and Partners; "Best Law Firms, Litigation-Bankruptcy-Tier1, Chicago" by U.S. News & World Report; Illinois Super Lawyers; and Illinois Leading Lawyers Network.

Movant has brought to bear on the problems of the Debtor the collective skill and experience of the following members of Adelman & Gettleman, Ltd.:

## CHAD H. GETTLEMAN (CHG) – Shareholder

Mr. Gettleman is a 1976 graduate of Marquette University Law School and is licensed to practice in the States of Illinois and Wisconsin. Following his graduation from college at the University of Illinois, Mr. Gettleman became a Certified Public Accountant. Mr. Gettleman was formerly a staff attorney for the Division of Corporate Regulation, Branch of Reorganization, U.S. Securities and Exchange Commission, specializing in corporate reorganization under the Bankruptcy Act. Mr. Gettleman joined the SEC in 1976, where he served until 1979.

In 1979, Mr. Gettleman became associated with the firm of Schwartz, Cooper, Kolb & Gaynor. In 1981, he became associated with the firm of Richards & Ralph, Ltd. In 1983, Mr. Gettleman formed the law firm of Adelman & Gettleman, Ltd. with Howard L. Adelman, both of whom remain the sole shareholder-principals of the firm.

983766_1

Mr. Gettleman has been involved in major bankruptcy cases since 1976 and has confirmed numerous plans of reorganization. He has devoted his entire professional practice exclusively to the areas of commercial litigation, bankruptcy, insolvency, and corporate reorganization.

Mr. Gettleman has spoken at Illinois Continuing Legal Education and Chicago Bar Association seminars. He has been a guest lecturer at John Marshall Law School. He is a co-author of the 2006 edition and 2008 supplement, and 2011 edition and 2013 and 2018 supplements to, the Business Bankruptcy Practice Handbook published by the Illinois Institute of Continuing Legal Education, and is a contributing author to "Attracting and Retaining Clients", Aspartore Books, a Thomson Reuters Business.

Mr. Gettleman has been chosen as one of America's Leading Lawyers for Business by Chambers USA, Chambers and Partners Legal Publishing, from 2006 through 2018. From 2004 - 2018 Mr. Gettleman was chosen by his peers as a member of the Illinois Leading Lawyers Network for Bankruptcy and Workout Lawyers. In 2018 and prior years, Mr. Gettleman was listed in the Top 10 Commercial Bankruptcy Lawyers in Illinois. In 2018 he was He has also been listed in The Best Attorneys Network in the areas of bankruptcy and reorganization. From 2005 - 2018, Mr. Gettleman was elected by his peers as an Illinois "Super Lawyer" in the area of bankruptcy and reorganization.

## HENRY B. MERENS (HBM) – Partner

Since his admission to practice in 1981, Mr. Merens has concentrated in the areas of bankruptcy, real estate, civil litigation, and commercial transactions, and has had extensive experience in virtually all aspects of insolvency practice. Mr. Merens has participated in numerous significant Chapter 11 Case, as counsel to Debtor, creditors, creditors' committees,

secured lenders, trustees and other parties. As debtor's counsel, Mr. Merens has confirmed a number of Chapter 11 plans of reorganization and has successfully concluded multiple Chapter 11 liquidations involving going-concern sales of various business enterprises. Mr. Merens has published several articles in the fields of bankruptcy and commercial practice, and has participated as a featured speaker at a seminar dealing with mortgage foreclosures in Illinois, speaking on the interplay of bankruptcy and the foreclosure process. In April 2009, Mr. Merens participated in a panel discussion sponsored by the National Business Institute entitled "Bankruptcy Forum: What Judges and Trustees Want You to Know." Mr. Merens covered the segment of the discussion concerning real estate issues in bankruptcy. Mr. Merens has been selected by his peers to Illinois Super Lawyers multiple times. Mr. Merens earned his B.A. degree at Trinity College and his J.D. degree at the Washington University School of Law.

## NATHAN Q. RUGG (NQR) – Former Partner *(services rendered during Interim Period only)*

Nathan Q. Rugg practiced with Movant from 2003 to on or about January 19, 2018, at which time he left for a different firm. Throughout his employment with Movant, Mr. Rugg represented an array of constituencies, including individual and corporate debtors, secured lenders, creditors, purchasers, guarantors, shareholders, and assignees for the benefit of creditors, in all manners of workouts, liquidations, reorganizations, refinancings, adversary proceedings, claim litigation and commercial litigation. Mr. Rugg became a partner in the firm in January 2009. Mr. Rugg has received the Martindale Hubbell peer review rating of "AV Preeminent." In 2016 he was named by his peers as a Super Lawyer in the area of bankruptcy and reorganization in the Illinois Super Lawyers publication, after being honored as a Rising Star in 2009, 2010, 2011, 2012, 2013, 2014 and 2015. Additionally, Mr. Rugg received Emerging Lawyer

distinction in 2015 and 2016 from the Leading Lawyers for Commercial Bankruptcy and Workout Law. Mr. Rugg has served as co-chair of the Bankruptcy Court Liaison Committee and serves on the Volunteer Attorney Panel in the Northern District of Illinois. Mr. Rugg has served on the Advisory Board for ABI's Mid-level Professional Development Program, and has had two articles published by the ABI in its monthly print journal. Mr. Rugg is a 1997 graduate of Dartmouth College, and graduated from the University of Illinois College of Law in 2000 *cum laude*. While attending the University of Illinois, Mr. Rugg served as an Associate Editor of the University's Elder Law Journal. He is a member of the Chicago Bar Association, Illinois Bar Association and the American Bankruptcy Institute.

### **STEVEN B. CHAIKEN (SBC) – Partner**

Mr. Chaiken joined Movant in January 2007 and focuses his areas of practice in business bankruptcy, reorganization and commercial litigation. Mr. Chaiken is a 1997 graduate of the University of Illinois, and graduated from the University of Illinois College of Law in 2000 *cum laude*. Prior to joining Movant, Mr. Chaiken served as the general counsel for a telecommunications company in South Florida with annual revenues exceeding $150 million. Mr. Chaiken successfully assisted that company through a lengthy Chapter 11 case which resulted in a confirmed plan of reorganization.

Since joining Movant, Mr. Chaiken has handled a wide range of matters and represented a variety of different clients, including individual Debtor in Chapter 7 bankruptcy cases, real estate developers in a complex Chapter 11 bankruptcy cases, corporate debtors in both Chapter 7 and Chapter 11 bankruptcy cases, and numerous individual and corporate clients in out-of-court workouts, including assignments for the benefit of creditors.

983766_1

Mr. Chaiken became a partner in January 2013.  He has been named as a "Rising Star" in the Illinois Super Lawyers Publication in 2010 through 2014.  Mr. Chaiken received a Martindale Hubbell peer review rating of "AV Preeminent."  In addition, Mr. Chaiken received a client distinction award from Martindale Hubbell.

### ERICH S. BUCK (ESB) – Partner

Erich S. Buck represents corporate and individual Debtor and creditors in workouts, liquidations, reorganizations and commercial litigation.  Mr. Buck is a 1997 graduate of Northwestern University and in 2001 graduated from the University of Iowa College of Law. While attending the University of Iowa, Mr. Buck served as Managing Editor of the University's Journal of Gender, Race & Justice.  Upon graduating law school, Mr. Buck served two years as law clerk to the Honorable Carol A. Doyle of the United States Bankruptcy Court for the Northern District of Illinois.  Prior to joining Movant, Mr. Buck was an associate at Reed Smith LLP (formerly Sachnoff & Weaver, Ltd.), where his practice focused primarily on creditors' rights litigation.

Mr. Buck was previously named a "Rising Star" in the Illinois Super Lawyers publication and an "Emerging Lawyer" in the Leading Lawyers publication. In 2018 he was named a Leading Lawyer in the Leading Lawyers publication. He has co-authored articles published in the *Journal for Corporate Renewal* and the *American Bankruptcy Institute Journal*. In November 2016, Mr. Buck participated in a CLE program sponsored by the Chicago Bar Association entitled "Commercial Bankruptcy Law: Current Trends and Cases," in which he served on a panel addressing various issues confronting practitioners in involuntary bankruptcy cases.

983766_1

## ALEXANDER F. BROUGHAM (AFB) – Associate

Mr. Brougham joined Movant in September 2012 and focuses his areas of practice in business bankruptcy, reorganization, and commercial litigation. Mr. Brougham is a 2006 graduate of Colby College and in 2009 graduated from the Northeastern University School of Law. Upon graduating from law school, Mr. Brougham served as law clerk to two bankruptcy judges in the United States Bankruptcy Court for the District of Massachusetts: first the Honorable Joel B. Rosenthal, and then the Honorable Melvin S. Hoffman when Judge Rosenthal retired. Mr. Brougham then served a one-year term as law clerk to the Honorable A. Benjamin Goldgar of the United States Bankruptcy Court for the Northern District of Illinois.

## NICHOLAS R. DWAYNE (NRD) - Associate

Mr. Dwayne is a 2012 graduate of the University of Illinois College of Law. Following his graduation, Mr. Dwayne rendered legal services as a bankruptcy consultant and law clerk until he joined Movant in May 2014 as a contract attorney. He became a full time associate with Movant in April 2017. Mr. Dwayne focuses his areas of practice in business bankruptcy, reorganization, and commercial litigation.

---

The following is a summary of the legal services rendered by Movant's attorneys during the Interim Period and Final Period:

| ATTORNEY | HOURS | RATE | VALUE |
|---|---|---|---|
| HLA | 3.40 | 525/hr | $1,785.00 |
| ESB | 208.80 | 425/hr | $88,740.00 |
| NRD | 80.00 | 295/hr | $23,600.00 |
| CHG | 251.20 | 525/hr | $131,880.00 |
| NQR | 111.00 | 475/hr | $52,725.00 |
| **TOTAL** | **654.40** | | **$298,730.00** |
| **ADJUSTED TOTAL** | | | **$285,992.50** |

983766_1

As a result of the acceptance of employment as counsel to the Debtor in this Chapter 11 Case, Movant was precluded from rendering services in other substantial legal matters. Since the commencement of the Chapter 11 Case, Messrs. Gettleman, Rugg and Buck have at times spent a significant portion of their time on matters involving the Debtor. The expertise of Messrs. Gettleman, Rugg and Buck has been required in light of the complexity of this Chapter 11 Case. The hourly rates charged by Movant are commensurate with the skill and expertise brought to bear on the duties and responsibilities of the Debtor and are generally <u>significantly less</u> than the rates of other bankruptcy practitioners in this District of similar experience.

## VII.

## MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE CODE AND BANKRUPTCY RULE 2016

Except with respect to the sharing of compensation authorized under Section 504(b) of the Code, Movant has not shared or agreed to share any award of fees received in connection with this Chapter 11 Case with any person, firm or entity. There does not exist any agreement or understanding between Movant, associates or employees, and any other person, firm or entity with respect to the sharing of compensation herein.

## VIII.

## <u>NOTICE</u>

Twenty-one (21) days' notice of this Final Fee Application has been, or will be, given to all Known Creditors[12] and Known Equity Security Holders[13] in the Chapter 11 Cases by U.S.

---

[12] "**Known Creditors**" means all persons or entities who have not requested notice and service of pleadings via CM/ECF in the Chapter 11 Cases, but: (a) are listed in any of the Debtors' bankruptcy schedules ("**Schedules**") and statements of financial affairs as holding liquidated, non-contingent, and undisputed claims, or their transferees; (b) have filed a proof of claim in any of the Chapter 11 Cases on or before the applicable claims bar date; (c) are counterparties to unexpired leases and executory contracts who neither filed a proof of claim nor are scheduled on the Debtors' Schedules F; or (d) are any other creditors with whom the Debtors did business after the applicable Petition Date and may therefore hold post-petition administrative expense claims.

983766_1

Mail, postage prepaid.  Furthermore, a copy of this Motion was served on twenty-one (21) days'

notice via CM/ECF, upon:  (a) the United States Trustee; (b) counsel to the Liquidating Trustee

and the now-terminated Committee; (c) counsel to the Debtor's secured lenders, BMO and BIP;

and (d) other parties in interest having filed and served requests for notice in the Chapter 11

Cases pursuant to Bankruptcy Rule 2002.  Movant requests that, pursuant to Bankruptcy Rules

2002 and 9007, the Court deem the foregoing notice sufficient under the circumstances, and that

no further notice be required.


## IX.

### CONCLUSION AND REQUEST FOR ALLOWANCE
### AND PAYMENT OF FINAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES

For the above and foregoing reasons, in consideration of the time and labor required and

performed in this Chapter 11 Case; the novelty and difficulty of the matters herein; the skill

required to properly and efficiently perform the legal services; the preclusion of employment of

Movant in other matters due to the complexity of this Chapter 11 Case; the customary fees

involved in comparable matters; the complexity of this Chapter 11 Case; the nature of the

matters; the experience, reputation and ability of Movant; the financial commitment required

during this Chapter 11 Case; and the results achieved, Movant respectfully requests that final

compensation in the amount of $285,992.50 (which includes fees approved in the Interim

Application and previously paid to Movant) for services rendered in this Chapter 11 Case, and

reimbursement of ordinary and necessary expenses incurred in connection therewith in the

amount of $3,203.56 sought herein (which includes costs approved in the Interim Application

and previously paid to Movant) (see Exhibit I attached to the Interim Application and Exhibit H

---

[13] **"Known Equity Security Holders"** means all holders of record of equity security interests in the Debtor as enumerated in the Debtor's *Corporate Ownership Statement* [Docket No. 6], but excludes equity security interest holders who hold shares in street name through nominees registered with Cede & Company.

47

attached hereto), totaling $91,706.60 of additional payments net of all previous payments, be determined to be reasonable and justified, and that the fees and costs requested be allowed, and that payment of the aforementioned $91,706.60 be made forthwith by the Liquidating Trustee, and for such other and further relief as is just.

Respectfully submitted,

ADELMAN & GETTLEMAN, LTD.

By    /s/ Chad H. Gettleman
                Chad H. Gettleman

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
ERICH S. BUCK, ESQ. (ARDC #6274635)
NICHOLAS R. DWAYNE, ESQ. (ARDC #6308927)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Attorneys for the Debtor

983766_1